UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
In re

SLOANE A. WORTH,

                              Debtor.
----------------------------------------------------------------x
SLOANE A. WORTH,

                              Appellant,                    **OPINION & ORDER**

        – against –
                                                           No. 23-CV-3182 (CS)
THOMAS C. FROST, Chapter 13 Trustee,

                              Appellee.
----------------------------------------------------------------x

<u>Appearances</u>:

H. Bruce Bronson
Bronson Law Offices PC
Harrison, New York
*Counsel for Debtor-Appellant*

Dennis Jose
Office of the Standing Chapter 13 Trustee Thomas C. Frost
White Plains, New York
*Counsel for Appellee Thomas C. Frost*

<u>Seibel, J.</u>

        This appeal concerns the March 31, 2023 Order, (A. 36-37 (the "March 31 Order")); *see*

ECF No. 1 at 1),[1] entered by Judge Cecelia G. Morris of the United States Bankruptcy Court for

the Southern District of New York, in the Chapter 13 bankruptcy proceeding captioned *In re*

---

[1] Citations with the prefix "A." refer to documents in the Appendix filed by Appellant.
(ECF Nos. 11-1, 11-2.)

*Sloane A. Worth*, No. 17-BK-23155 (Bankr. S.D.N.Y.).  The March 31 Order dismissed the Appellant's Chapter 13 case for cause pursuant to 11 U.S.C. § 1307(c).  (*See* A. 36-37.)

For the following reasons, the Bankruptcy Court's Order is vacated and the case is remanded.

## I.    **BACKGROUND**

Appellant Sloane A. Worth ("Debtor") filed her Chapter 13 bankruptcy petition on July 25, 2017.  (A. 162-217.)  At the time of the bankruptcy filing, she was facing a judgment of foreclosure on her home, despite the help of her husband who is gainfully employed.  (*See* A. 42.)  It appears that the secured claims in the case totaled $1,042,655, while the unsecured claims totaled $41,293.  (A. 193.)  The petition reflected that the Debtor had no monthly income but that her husband, the non-filing spouse, had a gross monthly income of $16,584.  (A. 188.)  After payroll deductions and monthly expenses, the couple's monthly disposable income was $300.49.  (A. 191.)  On March 6, 2020, the Debtor filed an amended Chapter 13 plan (the "Plan") that provided for payments of $300 a month for 60 months and proposed full repayment to all allowed secured and priority claims and a *pro rata* distribution of approximately 5% to all timely filed general unsecured claims.  (A. 127, 143-51.)  The Plan was confirmed on April 7, 2021.  (A. 138.)

On June 8, 2022, the Chapter 13 Trustee (whose successor is Appellee here) filed a motion seeking an order amending the Plan or, in the alternative, dismissing the case for cause.  (A. 126-34.)  The Trustee argued that the Plan should be modified because the Debtor's 2021 tax return, which she filed jointly with her husband, indicated a substantial increase in the Debtor's household income from 2020 to 2021.  (A. 128-31.)  Specifically, the 2021 joint tax return showed adjusted gross household income of $492,956, while the 2020 joint tax return showed

income of $260,872 – an increase of $232,084.  (*See* A. 109, 129.)  The Trustee argued that after

deducting taxes and expenses, the Debtor's average monthly disposable income for 2021 was

$21,997.69, and because the Debtor's disposable income is property of the bankruptcy estate, the

Debtor should have paid approximately $263,972.28 to the Trustee.  (A. 129.)  The Trustee

therefore sought an increase in plan payments based on the unanticipated increase in income.

(*See* A. 127-31.)  The Trustee also argued that the Debtor had acted in bad faith because the 2021

tax return showed cash gifts to charity totaling $52,860, whereas the Debtor's schedule of

expenses had provided for only $50 in household charitable or religious donations.  (A. 131-32,

219.)

By July 2022, the Debtor completed the Plan, having paid the Trustee a total of

$28,452.50, including $18,000 in monthly payments, plus an additional $10,452.50 from tax

refunds she had received, as required by the Plan.  (A. 43; *see* A. 144.)  On August 23, 2022, the

Debtor filed her objection to the Trustee's motion.  (A. 42-50.)  She argued, and supported with a

declaration from her husband, (A. 116-18), that $162,124 of the increase reflected on the 2021

tax return was not an increase in the monthly household income but rather resulted from the sale

of a property held by a trust of which her husband is a beneficiary, (A. 43-44.)[2]  The declaration

explained that the remainder of the increase came from a salary increase, bonus and $46,800

retention bonus that was encumbered for three years.  (A. 116-17.)  The declaration further

explained that in 2021, he acquired a number of personal items, including clothing and furniture,

---

[2] In his declaration, the Debtor's husband stated that he is one of five beneficiaries of a trust that was established by his father before he died.  (A. 116.)  He explained that the trust contained a commercial property that was sold in 2021, with the proceeds distributed to the beneficiaries.  (*Id.*)  He stated that his portion of the capital gain from the sale was included as income in the couple's 2021 joint tax return and represented the majority of the increase in adjusted gross income.  (*Id.*)

that belonged to his deceased parents, and he donated the items to charity along with some cash donations.  (A. 118.)  He stated that those donations totaled $52,860, and he listed that figure on the 2021 tax return, but that cash or check donations made by himself and the Debtor were less than $500 in 2021.  (*Id.*)  The Debtor therefore argued that the increased adjusted gross income on the tax return did not reflect any appreciable increase in disposable income and that the charitable donations did not reflect bad faith.  (A. 43-50.)

The Bankruptcy Court conducted hearings on the matter on February 22, 2023, (A. 7-18), and March 22, 2023, (A. 1-6).  At the February 22 hearing, the Trustee's counsel told the court that the Debtor's 2021 joint tax return showed a large increase in income because the non-filing spouse received additional money from an inheritance.  (A. 10-11.)  He argued that the Debtor should not be allowed to "have it both ways" by having her plan confirmed based on the non-filing spouse's income, yet shielding her spouse's windfall from her creditors.  (A. 11-13.) Allowing her to use her husband's income when convenient for her, but keeping "a substantial unanticipated increase" in income "off limits," did not, he contended, "wreak [*sic*] of good faith" and was like "gaming the system."  (A. 13.)  He also informed the court that the issue regarding the charitable contributions had been "cleared up," because based on conversations with the Debtor's counsel, he understood that the charitable contributions were not cash gifts but donations of personal items.  (A. 12-13.)

Debtor's counsel explained that the Debtor's husband had received capital gains from the sale of an inherited property.  (A. 14.)  He stated that the gain from the sale was not increased income for the Debtor and that he had tried to negotiate in good faith with the Trustee to no avail.  (*Id.*)  He argued that the Plan should not be changed because the Trustee's motion was

filed in June when the Plan would have been completed in July, and that the Plan should not be upended at "the 12th hour" absent bad faith. (A. 14-15.)

In response, the Trustee's counsel argued that the case presented "unique circumstances" because the Plan was solely reliant on the non-filing spouse's income, and the liquidation of the property had an impact on household disposable income. (A. 15.) He stated that it would be "unfair" for the Debtor and her husband to get a discharge when they have extra money that should benefit the creditors. (*Id.*) Debtor's counsel responded that he would agree with the Trustee's position if the increase was from wage income rather than an inheritance. (A. 16.)

The court disagreed with Debtor's counsel, stating that "'gaming the system' really comes to mind." (*Id.*) The court noted that 11 U.S.C. § 1325(b)(4)(A)(ii) – which determines whether the "commitment period" of a Chapter 13 payment plan will be three years or five – requires consideration of a married debtor's spouse's income regardless of whether the spouse is joining the Chapter 13 filing, and that the statute refers to the current monthly income of the debtor and the debtor's spouse combined. (*Id.*) Without further analysis, the court concluded that there was cause to dismiss the case pursuant to 11 U.S.C. § 1307, but said she would adjourn the case to March 22 to allow Debtor's counsel to file an amended "100 percent plan," noting that she found the situation to be "unconscionable." (A. 16-17.)

At the March 22, 2023 hearing, the Trustee told the court that the Debtor had not filed an amended plan and that the court should consider the motion for dismissal. (A. 4.) Debtor's counsel informed the court that the Debtor did not agree to filing a 100% plan. (*Id.*) The court responded that she was dismissing for cause under section 1307 on the grounds that 11 U.S.C.

§ 1325(b)(4)(A)(ii)[3] requires consideration of a married debtor's spousal income and refers to the current monthly income of the debtor and the debtor's spouse combined. (A. 5.) She embodied her ruling in an Order dated March 31, 2023. (A. 36-37.) On April 17, 2023, the Debtor appealed. (ECF No. 1.)

## II.   STANDARD OF REVIEW

This Court has jurisdiction pursuant to 28 U.S.C. § 158(a)(1) to hear appeals from final judgments, orders, and decrees of a bankruptcy court. "This Court may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings." *In re Bernard L. Madoff Inv. Sec., LLC*, No. 15-CV-1151, 2016 WL 183492, at *8 (S.D.N.Y. Jan. 14, 2016), *aff'd sub nom. Matter of Bernard L. Madoff Inv. Sec., LLC*, 697 F. App'x 708 (2d Cir. 2017) (summary order).[4]

"A district court reviews a bankruptcy court's conclusions of law *de novo*, its discretionary decisions for abuse of discretion, and its findings of fact for clear error." *In re Depietto*, No. 20-CV-8043, 2021 WL 3287416, at *4 (S.D.N.Y. Aug. 2, 2021). "Under *de novo* review, the Court affords no deference to the Bankruptcy Court's decision and decides the question as if no decision had been previously rendered." *In re Thiessen*, 606 F. Supp. 3d 65, 68 (S.D.N.Y. 2022). "By contrast, review for clear error is much more deferential to the bankruptcy court's findings." *In re Herman*, No. 22-CV-5624, 2023 WL 3072035, at *3 (S.D.N.Y. Apr. 24, 2023). "When reviewing for clear error, [the Court] may reverse only if [it is] left with the definite and firm conviction that a mistake has been committed." *United States v. Bershchansky*,

---

[3] The transcript reads "Section 1325(a)(4)(A)(ii)," (A. 5), but the Court assumes this is an error because there is no such section in the Code and the applicable section is 1325(b)(4)(A)(ii).

[4] Unless otherwise noted, case quotations omit all internal quotation marks, citations, alterations, and footnotes.

788 F.3d 102, 110 (2d Cir. 2015). "Mixed questions of fact and law are subject to *de novo* review." *In re Froman*, 566 B.R. 641, 647 (S.D.N.Y. 2017).

"Matters left to the discretion of the bankruptcy court," including modification of a Chapter 13 plan, "are reviewed for an abuse of discretion." *Hosley v. Wells Fargo Bank Minnesota*, No. 08-CV-752, 2008 WL 5169553, at *1 (N.D.N.Y. Dec. 9, 2008); *see In re Meza*, 467 F.3d 874, 876 (5th Cir. 2006) ("The decision whether to modify a chapter 13 plan is reviewed for abuse of discretion."). Likewise, "[b]ecause a bankruptcy court's decision to dismiss for cause is guided by equitable principles, it is reviewed for abuse of discretion." *In re Murray*, 565 B.R. 527, 530 (S.D.N.Y. 2017), *aff'd*, 900 F.3d 53 (2d Cir. 2018). "A bankruptcy court exceeds its allowable discretion where its decision (1) rests on an error of law (such as application of the wrong legal principle) or a clearly erroneous factual finding, or (2) cannot be located within the range of permissible decisions, even if it is not necessarily the product of a legal error or a clearly erroneous factual finding." *Miles v. Chase Bank*, No. 20-CV-4748, 2022 WL 842073, at *1 (E.D.N.Y. Jan. 24, 2022).

## III.   DISCUSSION

The Debtor argues on appeal that the Bankruptcy Court erred in dismissing for cause once the Debtor chose not to amend the Plan to pay 100% of her secured debt. (*See* ECF No. 11 ("Appellant's Br.") at 9-11.) She contends that there was no significant increase in disposable household income warranting modification of the Plan and that she did not act in bad faith. (*Id.* at 11-20.)

"Section 1307(c) of the Bankruptcy Code provides that 'on request of a party in interest and after notice and a hearing, the court . . . may dismiss a case under this chapter . . . for cause.'" *Rivera v. JP Morgan Chase*, No. 20-CV-5436, 2021 WL 1999410, at *4 (E.D.N.Y.

May 19, 2021) (quoting 11 U.S.C. § 1307(c)).  The statute provides a non-exhaustive list of eleven occurrences which constitute cause for dismissal of a Chapter 13 case, *see In re Froman*, 566 B.R. at 647, none of which apply here.[5]

"Although bad faith is not expressly enumerated in the statute, it is well established that lack of good faith may also be cause for conversion or dismissal under § 1307(c)."  *Id.*; *see In re Armstrong*, 409 B.R. 629, 633 (Bankr. E.D.N.Y. 2009) ("Although not specifically stated in the statute, a debtor's bad faith is considered 'cause' to convert or dismiss under section 1307(c).").  "Bad faith may be found . . . where there is evidence of an intent to delay or frustrate the efforts of secured creditors to enforce their legitimate rights."  *In re Froman*, 566 B.R. at 647.  Additionally, "[c]ourts have found bad faith in Chapter 13 cases in the following circumstances: 1) the debtor has few or no unsecured creditors; 2) the debtor has previously filed for bankruptcy; 3) the debtor's pre-petition conduct was improper; 4) the debtor's petition allows him or her to evade court orders; 5) the debtor has few debts to non-moving creditors; 6) the petition was filed on the eve of foreclosure; 7) the foreclosed property was the sole or major

---

[5] The enumerated factors are: "(1) unreasonable delay by the debtor that is prejudicial to creditors; (2) nonpayment of any fees and charges required under chapter 123 of title 28; (3) failure to file a plan timely under section 1321 of this title; (4) failure to commence making timely payments under section 1326 of this title; (5) denial of confirmation of a plan under section 1325 of this title and denial of a request made for additional time for filing another plan or a modification of a plan; (6) material default by the debtor with respect to a term of a confirmed plan; (7) revocation of the order of confirmation under section 1330 of this title, and denial of confirmation of a modified plan under section 1329 of this title; (8) termination of a confirmed plan by reason of the occurrence of a condition specified in the plan other than completion of payments under the plan; (9) only on request of the United States trustee, failure of the debtor to file, within fifteen days, or such additional time as the court may allow, after the filing of the petition commencing such case, the information required by paragraph (1) of section 521(a); (10) only on request of the United States trustee, failure to timely file the information required by paragraph (2) of section 521(a); or (11) failure of the debtor to pay any domestic support obligation that first becomes payable after the date of the filing of the petition."  11 U.S.C. § 1307(c).

asset of the debtor; 8) no possibility exists for reorganization; 9) the debtor's income is insufficient to operate; 10) there is no pressure from non-moving creditors; 11) reorganization essentially involves the resolution of a two-party dispute; and 12) the debtor filed solely to obtain an automatic stay." *In re Plagakis*, No. 03-CV-0728, 2004 WL 203090, at *4 (E.D.N.Y. Jan. 27, 2004). "Courts also consider whether: 1) the petition contains deficiencies or inaccuracies meant to mislead the court; 2) payments are fundamentally fair in timing and amount; 3) debtor had an improper motive in seeking relief; and 4) under the totality of the circumstances, the debtor has abused the provisions, purposes, and/or spirit of Chapter 13." *Id.*

Of these factors, the one that could apply to the post-confirmation conduct here is whether, under the totality of the circumstances, the debtor has abused the provisions, purposes, or spirit of Chapter 13. In its brief,[6] the Trustee does not highlight any conduct, other than adhering to the Plan despite the increase in household income, that could be considered bad faith.[7] (*See* ECF No. 14 ("Appellee's Br.") at 7-14.) I thus consider whether the Debtor's position – that there was no basis to require her to modify her Plan because her spouse was under no obligation to contribute his increased income toward her payments – was so meritless as to amount to bad faith or abuse of Chapter 13.

---

[6] The Trustee emphasizes that the primary purpose of its motion before the Bankruptcy Court was to obtain an amendment of the Plan, (Appellee's Br. at 6-8), and while it argues that the Bankruptcy Judge did not abuse her discretion in dismissing, it does not specifically contend on appeal that the Debtor acted in bad faith, although it refers to back to its arguments to that effect below. The Bankruptcy Court may consider on remand whether amendment is feasible and appropriate at this stage.

[7] The Trustee originally argued that the discrepancy between the charitable contributions reflected in the 2021 tax return and the charitable donations listed on the Debtor's schedule demonstrated bad faith, (A. 131-33), but he informed the Bankruptcy Court that the issue had been "cleared up" because he clarified with Debtor's counsel that the charitable contributions were not cash gifts but donations of personal items, (A. 12-13).

Section 1329(a)(1) provides that "[a]t any time after confirmation of the plan but before the completion of payments under such plan, the plan may be modified, upon request of . . . the trustee . . . to increase or reduce the amount of payments on claims." 11 U.S.C. § 1329(a)(1). "The purpose of [11 U.S.C. § 1329] is to allow modification of a confirmed plan should circumstances change during the life of the plan." *In re Ginn*, 653 B.R. 587, 591 (Bankr. S.D.N.Y. 2023). "Although § 1329(a) does not explicitly state what justifies such a modification, it is well-settled that a substantial change in the debtor's financial condition after confirmation may warrant a change in the level of payments." *In re Arnold*, 869 F.2d 240, 241 (4th Cir. 1989).

"Post-confirmation modification of a confirmed chapter 13 plan, absent a debtor's consent, is a process that should be used sparingly and only after the movant shows that the chapter 13 debtor has acted in bad faith or is in some way out of compliance, or unable to comply, with their plan." *In re Salpietro*, 492 B.R. 630, 637 (Bankr. E.D.N.Y. 2013). "The Court [should] not upend a confirmed chapter 13 plan, at the request of the trustee or an unsecured creditor, where a debtor has upheld his or her end of the bargain and is in full compliance with the confirmed plan and applicable provisions of the Bankruptcy Code." *Id.*

The Trustee does not suggest that the Debtor did not adhere to the Plan or uphold her end of the bargain. In fact, the Debtor completed the Plan. (A. 43.) Nor does he contend that the Debtor's husband's income is the Debtor's income.[8] But he contends that the changed

---

[8] It is well settled that "[t]he filing of joint tax returns does not alter property rights between husband and wife." *Callaway v. Comm'r*, 231 F.3d 106, 117 (2d Cir. 2000). There is thus no basis to infer that the income the Debtor's spouse received from the property somehow became property of the Debtor.

circumstances nevertheless warranted an increase in the monthly payment because they resulted in additional disposable monthly income.  (Appellee's Br. at 7-8.)

"The requirement that debtors provide all of their disposable monthly income to fund their Chapter 13 plan is found in § 1325(b)(1)[(B)]," *In re Self*, No. 06-40228, 2009 WL 2969489, at *4 (Bankr. D. Kan. Sept. 11, 2009), which provides that "[i]f the trustee or the holder of an allowed unsecured claim objects to the confirmation of the plan, then the court may not approve the plan unless . . . the plan provides that all of the debtor's projected disposable income to be received in the applicable commitment period . . . will be applied to make payments to unsecured creditors under the plan," 11 U.S.C. § 1325(b)(1)(B).  "The statute does not define 'projected disposable income,' but pursuant to [Bankruptcy Abuse Prevention and Consumer Protection Act ("BAPCPA")] amendments, it does state that 'disposable income' is 'current monthly income' (a defined term) less 'amounts reasonably necessary to be expended for the maintenance or support of the debtor or a dependent of the debtor.'"  *In re Malewicz*, 457 B.R. 1, 5 (Bankr. E.D.N.Y. 2010) (quoting 11 U.S.C. § 1325(b)(2)).  "Also added in the BAPCPA amendments, 'current monthly income' is defined in Section 101(10A) as 'the average monthly income from all sources that the debtor receives . . . includ[ing] any amount paid by any entity other than the debtor . . . on a regular basis for the household expenses of the debtor or the debtor's dependents.'"  *Id.* (quoting 11 U.S.C. § 101(10A)).  Thus, "current monthly income must include amounts regularly paid by any entity, including a non-filing spouse, for household expenses of the debtor."  *In re Toxvard*, 485 B.R. 423, 430 (Bankr. D. Colo. 2013).  Similarly, section 1325(b)(4)(A)(ii) calculates the commitment period based on "the current monthly income of the debtor and the debtor's spouse combined."  11 U.S.C. § 1325(b)(4)(A)(ii).

"[Section] 1329 does not specifically incorporate § 1325(b)," but "there are other statutory provisions that demonstrate clear Congressional intent to require that debtors pay to their unsecured creditors over the life of their plan all their projected disposable income to be received during the applicable commitment period." *In re Self*, 2009 WL 2969489, at *5. Furthermore, "[w]hen reading § 1329 together with § 1325 and § 521 [(which describes the Debtor's duties)], it is clear that Congress intended to allow case trustees to seek modifications of plans post-petition in order to address changes in disposable income." *Id.*

Because section 1329(a) does not explicitly state what justifies such a modification, however, "[t]here is no easily applied standard a court may use to determine whether to grant a motion to modify a chapter 13 plan." *In re Grant*, No. 19-22949, 2023 WL 3101571, at *3 (Bankr. S.D.N.Y. Apr. 26, 2023).[9] "Ultimately," however, "the decision regarding modification rests with the discretion of the court," *id.*, and courts in this Circuit have concluded that the bankruptcy court has broad discretionary authority to approve or disapprove the modification of a Chapter 13 plan, which discretion "must be guided by a respect for the finality of the confirmation process balanced by the powers bestowed on a bankruptcy court to issue orders necessary to prevent an abuse of the bankruptcy process and enforce Court orders," *In re Salpietro*, 492 B.R. at 637 (citing *Marrama v. Citizens Bank*, 549 U.S. 951 (2006)); *see In re Etwaroo*, 546 B.R. 516, 521 (Bankr. E.D.N.Y. 2016); *In re Roberts*, 514 B.R. 358, 363 (Bankr. E.D.N.Y. 2014).

---

[9] Indeed, courts disagree on whether a motion to modify a confirmed plan under section 1329 requires a threshold showing of changed circumstances, *In re Salpietro*, 492 B.R. at 635-36, and "whether section 1325(b)'s projected disposable income test should apply to modifications under section 1329," *id.* at 637. I need not address the first issue to decide this appeal, because the parties agree that changed circumstances exist here. I also need not resolve the second issue, because the parties seem to assume that the test should apply, and the outcome would be the same here either way.

Here, the Debtor argues that the Bankruptcy Court erred in determining that the case would be dismissed unless the Plan was modified, because "current monthly income does not include all the income of the non-debtor spouse, but rather only amounts expended on a regular basis for household expenses." (Appellant's Br. at 12.)  Thus, she contends, the one-time capital gain from the property sale (or, presumably, one-time bonuses) should not have been considered a part of her current monthly income under the Bankruptcy Code.  (*Id.* at 13.)  She relies in part on *In re Malewicz*, 457 B.R. 1 (Bankr. E.D.N.Y. 2010), in which a non-filing spouse sought an order that he had no obligation to remit to the Chapter 13 Trustee, for distribution to creditors, his share of a post-confirmation joint tax refund.  In determining that the non-debtor spouse's failure to turn over his share of the tax refunds did not constitute a default under the Chapter 13 plan, the *Malewicz* court relied on *In re Quarterman*, 342 B.R. 647 (Bankr. M.D. Fla. 2006), which held that "based upon the explicit language of section 101(10A), current monthly income does not include *all* the income of the non-debtor spouse, but rather only amounts expended on a regular basis for household expenses."  *Id.* at 651 (emphasis in original).  The *Malewicz* court "agree[d] with the statutory analysis in *Quarterman* and the conclusion that a non-debtor spouse's entire income is not included in the projected disposable income analysis."  *In re Malewicz*, 457 B.R. at 7.  It concluded that the non-debtor spouse's failure to disgorge his portion of the post-confirmation joint tax refund was not a default under the Plan, *see id.* at 9, because "although the calculation of 'projected disposable income' under the chapter 13 means test included a portion of the Non-Debtor Spouse's monthly income, that calculation is used only to arrive at the Debtor's monthly plan payment obligation" and "[i]n and of itself this does not afford the Trustee any right to compel the Non-Debtor Spouse to contribute his property to the Plan," *id.* at 2.

In arguing that there was a substantial increase in the Debtor's disposable income largely as a result of money that the Debtor's husband received from the sale of inherited property, (*see* A. 127-31), the Trustee relies in part on *In re Solis*, 172 B.R. 530 (Bankr. S.D.N.Y. 1994), where the court determined that the Debtor's receipt of $40,000 from the sale of his medical practice was a substantial change in circumstances in the form of "increased income or receipt of a large sum of money." *Id.* at 532. After "balanc[ing] the equities," the court concluded that allowing the debtor to receive a $40,000 windfall while his unsecured creditors only received 10% of their claims would be a "perversion" of 11 U.S.C. § 1325(a)'s good faith provision and of 11 U.S.C. § 1325(b). *Id.* at 533. The Trustee cites this case to support the proposition that a substantial change in the debtor's financial circumstances may warrant an increase in payment, (*see* Appellee's Br. at 7), but in *Solis*, the court was considering the *debtor's* receipt of a large sum of money. Here we are considering the non-filing spouse's receipt of a large sum of money. I agree with the courts that have determined that if a non-debtor spouse's income is not "'(1) expended regularly (2) on household expenses, then it is not included in the debtor's current monthly income'" because the Code defines "current monthly income" as monthly income received on a regular basis for household expenses. *In re Malewicz*, 457 B.R. at 7 (quoting *In re Quarterman*, 342 B.R. at 650-51); *see* 11 U.S.C. § 101(10A)(B). Thus, the one-time funds that the Debtor's husband received from the sale of inherited property cannot be considered monthly income.

The Trustee argues that courts typically calculate a debtor's disposable income to include the income and expenses of a non-filing spouse. (*See* Appellee's Br. at 13.) But he overlooks that the "income" has to be "current monthly income," which the proceeds of a one-time sale of property are not, and that inclusion of the non-filing spouse's income in calculating the debtor's

disposable income does not require the non-filing spouse to contribute his property to the plan. *See In re Ladieu*, 548 B.R. 49, 61 (Bankr. D. Vt. 2016) ("Since only the debtor is required to make plan payments, the non-debtor spouse's income is merely a factor in calculating the debtor's disposable income; the non-debtor spouse's contributions to household expenses are not specifically pledged or earmarked for turnover to the trustee" and "[t]he non-debtor spouse is not legally bound to contribute such income to fund the plan.").

There is some logic to the Trustee's position, with which the Bankruptcy Court apparently agreed, that it is unfair that "the Debtor gets to use all of the non-filing spouse's income when it's convenient for her, but then when there's a substantial unanticipated increase, . . . that money is all of a sudden off limits." (A. 13.) That the Debtor contributes nothing to the payments – apparently because she had no income and her expectation that she would in the future never came to fruition, (*see* A. 11) – may be a reason, as the Bankruptcy Judge implied, (A. 16), that this case never should have been confirmed as a Chapter 13 in the first place, *see In re Malewicz*, 457 B.R. at 7 ("The Debtor is obligated under the Bankruptcy Code to make payments under the confirmed Plan or risk dismissal of the case. Nothing in the Code obligates anyone other than the Debtor to fulfill the requirements of the confirmed Plan"). But in light of the plain language of section 101(10A)(B), the non-filing spouse's receipt of an inheritance or other one-time windfall does not constitute an increase in the debtor's current monthly income. Even an increase in the spouse's salary would only do so if, over time, the spouse regularly contributed that increase to household expenses. To the extent fairness might require that a Chapter 13 plan funded solely by a non-filing spouse be amended upward whenever that spouse's income or assets increase, that change would have to come from an amendment to the Code.

But here, at the conclusion of the first hearing, the Bankruptcy Court, relying on 11 U.S.C. § 1325(b)(4)(A)(ii), gave the Debtor two options:  propose an amended Plan to pay 100% of the debt to the creditors or face dismissal of the case.  (*See* A. 16-18.)  Because the increased income reflected on the 2021 tax return cannot reasonably be categorized as money received on a regular basis under 11 U.S.C. § 101(10A)(B)(i), the court's decision rested on a misapplication of the law, and the court abused its discretion by requiring the Debtor to modify the Plan to a 100% plan solely because of her non-filing spouse's receipt of income.[10]  At least, the Bankruptcy Court misapplied the law in finding bad faith or abuse of Chapter 13.  It appears that the Bankruptcy Judge so found based simply on the Debtor's position that her non-filing spouse's increased income did not justify an upward modification of the Plan, but in light of the case law supporting that he had no obligation to contribute his property toward the Plan, *see In re Ladieu*, 548 B.R. at 61; *In re Malewicz*, 457 B.R. at 7; *In re Quarterman*, 342 B.R. at 650-51, it was error to conclude that the Debtor's position was taken in bad faith.

Moreover, the Debtor argues that her household income did not truly increase in 2021 as suggested by the tax return, because the couple's 2020 income was significantly reduced due to the pandemic, and that comparing the 2021 tax return with the 2016 tax return, which was considered at the time the plan was formed, would have created a more accurate picture of the changes in her financial situation.  (Appellant's Br. at 14.)  The joint returns of the Debtor and her husband showed adjusted gross income of $349,416 in 2016, $260,872 in 2020, and

---

[10] Even if a new calculation of disposable income were appropriate, neither the Trustee nor the Bankruptcy Court made any effort to undertake one.  The record does not reflect any consideration as to whether, as the result of the spouse's inheritance or increased income, there had been a change in amounts paid on a regular basis for household expenses of Debtor or her dependents.  Nor does any basis appear in the record for the conclusion that the non-filing spouse's increased income sufficed for payment of 100% of the Debtor's unsecured debt of over $369,000.  (*See* A. 133.)

(excluding the $162,000 capital gain from the inherited property) $330,956 in 2021. (*See id.* at 14-15; A. 109.) The Debtor submits that comparing the 2016 adjusted gross income to the 2021 adjusted gross income (excluding the gain from the inheritance) reveals a $18,460 decrease from 2016 to 2021. (Appellant's Br. at 15.) The Trustee does not respond to this argument in its brief, but if it is accurate, it could explain why the seemingly dramatic jump in adjusted gross income from 2020 to 2021 did not justify modification of the Plan to a 100% plan.

Relatedly, the Debtor explains that she was not unwilling to amend her Plan to increase the payments, but that she declined to propose a 100% plan as required by the court because the increase in income was not as much as suggested by the tax returns, and the court did not afford her the opportunity to amend the Plan to an amount commensurate with the true increase. (ECF No. 15 at 1.) The Debtor submits that amending the Plan to 100% "was not feasible for [her] even with her husband's assistance." (*Id.*) The parties apparently attempted to negotiate a middle ground to no avail, (*see* A. 10, 14), but the fact that those negotiations failed does not suggest that the Debtor acted in bad faith or that she would have been unwilling to comply with an amended Plan had the court given her an opportunity to amend the Plan to an amount below 100%.

Given the totality of the circumstances, the Debtor's conduct here did not amount to bad faith or abuse of Chapter 13, and the Bankruptcy Court rested on an error of law, and therefore abused its discretion, in dismissing the case for cause.

IV.     **<u>CONCLUSION</u>**

For the foregoing reasons, the Bankruptcy Court's Order is vacated and the case is

remanded to the Bankruptcy Court for further proceedings consistent with this decision.  The

Clerk of Court is respectfully directed to close the case.

**SO ORDERED.**

Dated: February 26, 2024
        White Plains, New York

_____
CATHY SEIBEL, U.S.D.J.